UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                                              PLAINTIFF

v.                                                                    CRIMINAL ACTION NO. 3:09CR-7-S

BRANDON W. DUFFY                                                                     DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter was referred to the United States Magistrate Judge for hearing and for issuance of a report and recommendation on the motion of the defendant, Brandon W. Duffy, to suppress statements made and evidence seized as fruits of an un-*Mirandized* statement he made to Wal-Mart security personnel on May 2, 2008 prior to his arrest.

An evidentiary hearing was conducted and additional post-hearing briefs were submitted. The magistrate judge concluded that no *Miranda* violation had occurred, as no credible evidence supported a finding that Wal-Mart personnel acted as agents of the police. He reasoned that because Duffy incriminated himself during a private interrogation, no *Miranda* warning was required, no Fourth or Fifth Amendment violation occurred, and probable cause supported Duffy's arrest. The magistrate judge recommended that the motion to suppress be denied. Duffy has filed objections to the magistrate judge's report.

The court has conducted a *de novo* review of those portions of the Report and Recommendation to which Duffy objects and concludes that the objections are without merit. Duffy also filed a motion for oral argument (DN 96). No argument is necessary in light of the comprehensive record and substantial and thorough briefing which has taken place. The motion for oral argument will be denied.

The underlying sequence of events which culminated in the arrest of Duffy on May 2, 2008 was set forth in the magistrate judge's report and need not be repeated in full here. Duffy urges that he was involuntarily detained and interrogated by Wal-Mart employees who were acting in concert with the Louisville Metro Police Department ("LMPD"). He also contends that the evidentiary hearing should have been reopened to permit him to offer evidence to attack the credibility of Detective Arterburn of the LMPD.

We quote from the magistrate judge's report which concisely states the issue raised by Duffy's suppression motion:

"Officers of the Louisville Metro Police Department arrested Brandon Duffy at a Wal-Mart store in Fern Creek, Kentucky on May 2, 2008, and executed a search warrant of his residence and computer on the same day. In a videotaped statement following his arrest, Duffy signed a *Miranda* waiver and then admitted to videotaping male children in the men's room at Wal-Mart while they urinated. Duffy also admitted to the same conduct at a little league baseball field. Duffy faces federal charges for both production and receipt of child pornography. [footnote omitted].

Duffy's arrest was the culmination of investigative efforts on the part of both Wal-Mart security personnel and the police department. Before his arrest, Duffy sat for an interrogation conducted by Wal-Mart after a confrontation in the store and proceeded to incriminate himself and to provide Wal-Mart with a written statement. One factual issue presented here concerns the level of cooperation between Wal-Mart and law enforcement. Did Wal-Mart conduct its investigation at the behest or direction of police or under sufficient police coordination such that Wal-Mart employees were a mere proxy for police detectives? The police, unlike Wal-Mart security, may obtain only uncoerced, *Mirandized* statements and must investigate under the constitutional constraints against unreasonable searches and seizures." *Report and Recommendation* (DN 90) at p. 2.

Duffy urges that the interrogation was a coordinated effort between the police and Wal-Mart security. He contends that the communications between security officers Valrie Dorsey and Robert Mangold with Sergeant Thornsberry and Detective Arterburn of LMPD to share information discovered in Wal-Mart's investigation establish that Wal-Mart personnel were acting as agents of the police at the time they questioned Duffy. The magistrate judge roundly rejected that argument however. He concluded that Wal-Mart security had a clear interest in protecting Wal-Mart's customers and in maintaining the integrity of the store. These interests were furthered in this instance by Wal-Mart security officers' attempt to ferret out suspected criminal activity in the store restroom.

The testimony of both security officers was that their actions upon encountering Duffy embroiled in a confrontation with a number of angry customers on May 2, 2008 were in accordance with normal security procedures. When it was discovered that Duffy had been challenged by a number of customers near the restroom, they attempted to defuse the situation and removed Duffy from the sales floor.

Although there was no specific policy for dealing with the particular conduct which occurred in the restroom, the security officers proceeded in accordance with Wal-Mart policy designed to address various types of criminal activity in the store such as shoplifting and purse-snatching. Mangold testified that Wal-Mart personnel begin an investigation by locating the criminal activity on store surveillance videotape, identifying a suspect, then gathering as much information as possible. If the victim of a crime is a Wal-Mart customer, the police are contacted. In this instance, a child was allegedly victimized in the store bathroom and the police were notified. Dorsey provided the police additional information after she later identified Duffy on surveillance tapes and again after identifying Duffy's vehicle in the store parking lot and taking down the license plate number.

Despite Duffy's claim to the contrary, he has shown nothing to contradict the testimony that Mangold interviewed him in the normal course of a Wal-Mart security criminal investigation. Mangold had 19 years of experience in conducting interviews of persons suspected of criminal activity in Wal-Mart stores. Dorsey stated that the questioning of Duffy was handled as they normally handled all criminal investigations. She stated that if a suspect is found in the store, the individual is taken to a private area, either a conference room or office, where security personnel conduct an interview and call the police. That is what occurred in this case. Duffy was escorted from the site of the confrontation in the store's public area to a conference room at the rear of the store. He remained in the conference room for an hour and a half, and was questioned by Mangold. Duffy was asked for his cell phone, camera, and identification at the beginning of the interview, all of which he voluntarily produced. Duffy was not physically restrained or told that he could not leave. Duffy did not ask to leave and declined to answer his cell phone when it rang. Mangold identified himself as the person in charge of investigations for Wal-Mart and stated that police were called. Duffy was informed that an investigation was being conducted concerning suspected criminal conduct in the men's restroom in response to a customer complaint. At one point during the interview, Mangold inspected the camera and noted that the memory card was missing. Duffy stated that he had flushed it down the toilet in the men's restroom. After a long period of questioning during which Duffy incriminated himself, Mangold provided Duffy with a pen and paper and asked him to write a statement. He then left the room, leaving Duffy alone. When he had completed the statement, he informed Mangold. Thereafter, Detectives Jackman and Arterburn formally arrested Duffy, escorting him out the rear entrance and into a police vehicle.

The magistrate judge correctly found that "[t]he Fourth Amendment proscribes only governmental action and does not apply to a search or seizure, even an unreasonable one, conducted by a private individual not acting as an agent of the government." *United States v. Lambert*, 771 F.2d 83, 89 (6th Cir. 1985). The Court of Appeals has stated that an individual can be found to be

acting as an agent for the government if the police have "instigated, encouraged, or participated in" the search, and the individual engaged in the search "with the intent of assisting the police in their investigative efforts." *United States v. Robinson*, 390 F.3d 853, 872 (6th Cir. 2005), *quoting Lambert, supra.* The magistrate judge determined, and we agree, that the scenario before the court is comparable to the facts underlying the decision in *United States v. Howard*, 752 F.2d 220 (6th Cir. 1985) rather than those found in *United States v. Hardin*, 539 F.3d 404, 407 (6th Cir. 2009).

The magistrate judge aptly noted the distinction between the two cases, a distinction which is critical to the outcome of the suppression question. In *Hardin*, the court found that an apartment manager was acting as a government agent when he entered an apartment under a ruse, concocted by police, that he was searching for a plumbing leak. He entered the apartment to ascertain whether a parole violator was on the premises. The court found that the apartment manager had no other reason for entering the apartment but the business of the police. The court distinguished the facts before it from *Howard* in which "the intent of the *private party* conducting the search [was] *entirely independent* of the government's intent to collect evidence for use in a criminal prosecution..." *Hardin*, 539 F.3d at 418, *quoting Howard*, 752 F.2d at 227 (emphasis in original).

In both the *Hardin* and *Howard* cases, the court reiterated the test utilized in this circuit for determining agency, requiring an evaluation of (1) the knowledge or acquiescence of the government, and (2) the intent of the party performing the search. *Hardin, Id.* and *Howard, Id., both quoting United states v. Walther*, 652 F.2d 788 (9th Cir. 1981). The court found in *Hardin* that "the search of Apartment 48 was wholly *dependent* on the government's intent," and thus concluded that the apartment manager had acted as a government agent.

In *Howard, supra.,* the court found that there was no agency relationship between an arson investigator and the government when the police "had knowledge of, and even participated in" the search by the investigator, gathering evidence of arson and insurance fraud. Despite cooperation with the police, the court found that the investigator "was rightfully on the property to determine the

liability of the insurance company," and had an intent to search which was "entirely independent of the government's intent to collect evidence..." *Howard*, 752 F.2d at 227-228. Thus the holding in *Howard* illustrates that in certain instances concurrent interests can exist which do not amount to concerted action. Rarely is there a scenario which is as clearly defined as that in *Hardin* where the landlord had no legitimate basis for entering the locked premised of a tenant and no motivation for such entry except to perform a task for the police. By contrast, in *Howard*, a legal and legitimate motivation for the investigation existed and was not eviscerated by the assistance of the police. The agency test requires the concurrence of two elements - instigation, encouragement, or participation of the police in the search, and intent on the part of the private party to assist the police in their investigative efforts by performing the search. *Robinson, supra.*

In this case, the fact that the police had an obvious parallel interest in eradicating crime in this neighborhood store does not *ipso facto* establish an agency relationship with Wal-Mart security. The police and Wal-Mart security share the identical interest in eradicating crime in the Wal-Mart store. However, this interest is independently motivated and independently pursued by these two entities. The police as public servants, and Wal-Mart as a private business, both employ officers to perform security functions. Mangold testified that it is his function to stop losses and maintain a safe environment for customers of Wal-Mart.

Unlike the apartment manager in *Hardin* who was solicited to enter the apartment by and for the police, Mangold and Dorsey investigated an alleged crime committed on the Wal-Mart premises in the normal and usual course of their employment. The apprehension and questioning of Duffy was not orchestrated by the police, but was rather the result of Duffy's return to the store premises. The record evidence establishes that these security officers proceeded in the ordinary course. The fact that their course of action coincided with the course of action which would have been taken by law enforcement officers is not surprising inasmuch as both sought to eradicate suspected criminal activity in the Wal-Mart store. It would be a ludicrous result to require store security personnel to

refrain from performing the duties of their employment to avoid being dubbed agents of the police. Nor could Wal-Mart's interest be adequately protected if its security personnel could not contact or communicate with police until after any in-house investigation had been completed.

Mangold and Duffy had cooperated and communicated with the police during the course of the investigation. However, they detained and questioned Duffy on the premises of Wal-Mart as the result of an occurrence in the store on that date, and they did so in accordance with customary Wal-Mart security practices. As noted by the magistrate judge, "Like the insurance investigator whose conduct served his employer's interest, Mangold would have conducted a conference room interrogation in the same manner regardless of police involvement." *Report and Recommendation* (DN 90) at p. 21. We conclude, therefore, that Wal-Mart security personnel were not acting as agents of the government during the detention and questioning of Duffy on May 2, 2008. We find that the Report and Recommendation of the magistrate judge is thorough, well-reasoned, and correct in all aspects.[1]

Therefore, **IT IS HEREBY ORDERED AND ADJUDGED** that

1. After *de novo* review, the objections of the defendant, Brandon W. Duffy, to the Report and Recommendation of the United States Magistrate Judge (DN 92) are **OVERRULED**.

2. The motion of the defendant, Brandon W. Duffy, for oral argument (DN 96) is **DENIED.**

3. The Report and Recommendation of the United States Magistrate Judge (DN 90) is **ACCEPTED AND ADOPTED IN ITS ENTIRETY**.

4. The motion of the defendant, Brandon W. Duffy, to suppress evidence (DN 45) is **DENIED.**

---

[1] Duffy also urges that the magistrate judge improperly refused to reopen the evidence to permit him to attack Detective Arterburn's credibility with additional evidence that he had previously been disciplined for untruthfulness. As the findings of fact do not turn on the testimony of Arterburn, the magistrate judge correctly declined to further burden the record with this collateral matter. Additionally, Duffy reargues his contention that a reasonable individual in his shoes would not have felt free to leave the conference room on the occasion of the interview. We have reviewed the record and reject this argument, as did the magistrate judge.

**IT IS SO ORDERED.**